IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JERRY BRIGGS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. SAG-25-04098 |
| STEVEN C. WESTON, *et al.*, | * | |
| Defendants. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Jerry Briggs ("Plaintiff") filed this action against Defendants Steven C. Weston, Kathleen A. Weston, and Davies US, LLC ("Davies" and, collectively with the Westons, "Defendants"), asserting claims arising out of the sale of Mr. Weston's company, SKWeston & Company LLC ("SKWeston"), to Plaintiff. ECF 1. Two of the Defendants have filed motions to dismiss for failure to state a claim. ECF 13 (Ms. Weston) and ECF 18 (Davies). Plaintiff opposed both motions, and the movants filed replies. ECF 17, 19, 20, 22. Having carefully considered all of the filings, this Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, both motions to dismiss will be granted and the claims against the moving Defendants will be dismissed without prejudice.[1]

## I.    FACTUAL BACKGROUND

The facts below are derived from the Complaint and taken in the light most favorable to Plaintiff, the non-moving party. Mr. Weston formed SKWeston in 2016, to provide management consulting and managed services to outside businesses. ECF 1 ¶¶ 16–17. In June of 2021, Mr.

---

[1] Plaintiff served Mr. Weston with the summons and complaint on February 21, 2026. ECF 21. Because Mr. Weston has not yet responded, Plaintiff should promptly file a motion for Clerk's entry of default.

Weston sold SKWeston to Davies for approximately 4 million U.S. dollars. *Id.* ¶ 18. Shortly thereafter, Davies sued Mr. Weston for fraud, alleging that he falsified financial records he provided to Davies during due diligence ("the Davies Lawsuit"). *Id.* ¶¶ 19–20; ECF 1-1.

To settle the Davies Lawsuit, Mr. Weston executed a promissory note dated September 1, 2021 ("Promissory Note"). *Id.* ¶ 21; ECF 1-2. The Promissory Note required Mr. Weston to make periodic payments and pay in full by a final maturity date of the earlier of the 10-year anniversary of the Promissory Note's effective date or the date of Mr. Weston's sale of SKWeston to a third party. ECF 1 ¶ 21.

In 2022, Mr. Weston listed SKWeston for sale on a website "bizbuysell.com." *Id.* ¶ 25. Plaintiff saw the ad and requested a non-disclosure agreement allowing him to review SKWeston's financial and business information. *Id.* ¶ 26. The Confidential Information Memorandum ("CIM") Plaintiff received "purported to include SKWeston's financial results for 2019 through 2022, and projected $3.87M of revenue for 2022." *Id.* ¶ 29. On January 18, 2023, based on the information he had received in due diligence, Plaintiff submitted a letter of intent to purchase SKWeston for $6.9 million, with an earnout of $2.1 million. *Id.* ¶ 31. The earnout and financing terms were revised on February 1, 2023. *Id.* ¶ 32.

On February 15, 2023, Plaintiff had a due diligence call with Mr. Weston and the broker. *Id.* ¶¶ 5, 33. During the call, Mr. Weston did not disclose any prior litigation, including the Davies Lawsuit. *Id.* ¶ 33. The parties continued due diligence throughout March, April, and early May of 2023. *Id.* ¶¶ 34–44. In the course of those discussions, the broker implied to Plaintiff that "a business valuation could be a problem." *Id.* ¶ 36. Additionally, Mr. Weston could not provide signed financial documents from a Certified Public Accountant as promised, *id.* ¶¶ 37–39, and instead provided documents purporting to be generated from QuickBooks and provided by his

outsourced Chief Financial Officer, Travis Hamburg. *Id.* ¶¶ 40, 43–44. Those documents included a balance sheet for 2022 ("False 2022 Balance Sheet"), which instead was a Word document that Mr. Weston converted to a PDF. *Id.* ¶¶ 43–44.

Plaintiff's lender engaged in its own due diligence process, including commissioning a business valuation. *Id.* ¶¶ 45–46. The lender approved a loan in the amount of $4,100,000.00. *Id.* ¶ 47. Based on the False 2022 Balance Sheet and the other fraudulent financial information Mr. Weston provided, Plaintiff proceeded to closing and purchased SKWeston for $6,900,000.00. *Id.* ¶ 48.

Years after closing, on September 19, 2025, Plaintiff obtained from Travis Hamburg his actual 2022 Balance Sheet ("True 2022 Balance Sheet"). *Id.* ¶ 50. A comparison revealed that the False 2022 Balance Sheet multiplied revenues "by roughly 24 times," among other falsehoods that created the effect "that a tiny, money-losing company with negative net worth falsely appears to be a multi-million-dollar, highly profitable business with over $1.9 million in equity." *Id.* ¶ 52. In addition, Mr. Weston intentionally inflated the company's receivables, which were material to Plaintiff's decision to purchase SKWeston, and exaggerated its client list. *Id.* ¶¶ 54–55, 58–59. Plaintiff relied on all of the fraudulent financial information provided by Mr. Weston in deciding to purchase the company. *Id.* ¶¶ 60–63.

## II.    LEGAL STANDARD

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if

the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is

improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). A court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, "[a] court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

## III.    ANALYSIS

As is evident from the factual summary above, the vast majority of Plaintiff's allegations describe wrongdoing by Mr. Weston. The movants here are the other two Defendants. The plausibility and sufficiency of the claims against them are addressed in turn.

### A.  Ms. Weston

Plaintiff asserts just one claim against Ms. Weston: unjust enrichment in Count IX.[2] And the factual assertions involving Ms. Weston are sparse. First, Plaintiff summarizes allegations made in the Davies Lawsuit alleging that Mr. Weston "diverted the proceeds [of the Davies sale]

---

[2] Plaintiff acknowledges that his Complaint contains only five counts and that "Count IX" should have been "Count V." Nevertheless, for clarity, this Court will adhere to the numbering in the existing Complaint.

to his ex-wife, Ms. Weston." ECF 1 ¶¶ 141, 143. Second, Plaintiff alleges, with no factual specificity, that "Mr. Weston *and Ms. Weston* obtained the proceeds of the sale of SKWeston to [Plaintiff] as a result of the fraudulent conduct of Mr. Weston." *Id.* ¶ 148 (emphasis added). Third, Plaintiff alleges that after the closing on the sale of SKWeston to Plaintiff on May 19, 2023, "Mr. Weston diverted all or a portion of that sale to his wife or ex-wife, Ms. Weston." *Id.* ¶ 150. He further alleges that those proceeds "thereby conferred a benefit on Mr. Weston, and Ms. Weston" and that "[a]t the time of receiving those proceeds, both Mr. Weston and Ms. Weston were aware that these proceeds conferred a benefit upon them." *Id.* ¶¶ 151–52.

Plaintiff simply has not alleged sufficient facts to state a plausible claim against Ms. Weston. The lack of specificity and resulting speculation is most evident in the conclusory assertions that "all or a portion" of the sale proceeds were diverted to Mr. Weston's "wife or ex-wife." The claim against Ms. Weston, as pleaded, is all "labels and conclusions" reciting the elements of unjust enrichment, without the factual matter required to meet the *Twombly* standard. Accordingly, the unjust enrichment count in Count IX will be dismissed as to Ms. Weston.

### B. Davies

Plaintiff also asserts just one claim against Davies: conspiracy to commit fraud in Count IV. His sole factual contention is that the Promissory Note executed to resolve the Davies Lawsuit evidences an "express agreement and conspiracy that Mr. Weston would continue his efforts to sell SKWeston to a third party, and that such efforts would necessarily include efforts to sell SKWeston based upon fraudulent financial information." ECF 1 ¶ 128. He argues that "Davies, thus, agreed, conspired, aided, encouraged and assisted Mr. Weston in engaging in the fraudulent scheme and scam against [Plaintiff] that ultimately resulted in [Plaintiff] purchasing SKWeston under false and fraudulent pretenses." *Id.* at ¶ 131.

Davies argues that Plaintiff's claim of conspiracy to commit fraud has not been pleaded with particularity, as required by Federal Rule of Civil Procedure 9(b). *See Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 823 (D. Md. 2005). Particularity requires alleging the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). And in a conspiracy context, "Plaintiff must also allege what [each defendant] specifically did to carry the conspiracy into effect." *Hill*, 383 F. Supp. 2d at 825.

Here, Plaintiff's complaint is devoid of any allegations plausibly suggesting a conspiracy involving Davies. He does not allege any communications between Davies and Mr. Weston relating to the marketing or sale of SKWeston to Plaintiff or anyone else. His exclusive reliance on the relatively standard terms of the Promissory Note simply does not state a plausible claim. The Promissory Note does not require or even suggest that Mr. Weston sell or market SKWeston and, if a sale were to occur, the Promissory Note does not mandate its sale for any particular value. It simply indicates that a sale of SKWeston would advance the maturity date of the Promissory Note and require full payment to Davies. Mr. Weston was free to keep ownership of SKWeston or sell SKWeston for an amount far below what he owed Davies, if he had some other means to pay Davies the amount he owed. In the absence of any allegations pleading with particularity facts suggesting the existence of a conspiracy between Davies and Mr. Weston to defraud Plaintiff or another potential buyer, Plaintiff's claim against Davies must be dismissed.

## IV.    CONCLUSION

For the reasons set forth above, the Motions to Dismiss filed by Ms. Weston, ECF 13, and Davies, ECF 18, will be GRANTED and the claims against each Defendant will be dismissed without prejudice. A separate Order follows.


Dated:  May 4, 2026                                         /s/
                                                         Stephanie A. Gallagher
                                                         United States District Judge