**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JERRY BRIGGS,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Case No. SAG-25-04098** |
| **STEVEN C. WESTON, *et al.*,** | * | |
| **Defendants.** | * | |

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Following dismissal of his original complaint, Plaintiff Jerry Briggs ("Plaintiff") filed an Amended Complaint against Defendants Steven C. Weston and Kathleen A. Weston, asserting claims arising out of the sale of Mr. Weston's company, SKWeston & Company LLC ("SKWeston"), to Plaintiff. ECF 33. Ms. Weston has filed a motion to dismiss Count IV, the only count pending against her. ECF 36. Plaintiff opposed the motion, ECF 37, and Ms. Weston filed a reply. ECF 38. This Court has reviewed the filings and concludes that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, Ms. Weston's Motion to Dismiss will be granted.

## I. FACTUAL BACKGROUND

The facts below are derived from the Amended Complaint, ECF 33, and taken in the light most favorable to Plaintiff, the non-moving party. Mr. Weston formed SKWeston in 2016, to provide management consulting and managed services to outside businesses. *Id.* ¶¶ 15, 16. In June of 2021, Mr. Weston sold SKWeston to Davies US, LLC ("Davies") for approximately 4 million U.S. dollars. *Id.* ¶ 17. Shortly thereafter, Davies sued Mr. Weston for fraud, alleging that he

falsified financial records he provided to Davies during due diligence ("the Davies Lawsuit"). *Id.* ¶¶ 18–19; *see* Exh. 1.

To settle the Davies Lawsuit, Mr. Weston executed a promissory note dated September 1, 2021 ("Promissory Note"). *Id.* ¶ 20; *see* Exh. 2. The Promissory Note required Mr. Weston to make periodic payments and pay in full by a final maturity date of the earlier of the 10-year anniversary of the Promissory Note's effective date or the date of Mr. Weston's sale of SKWeston to a third party. *Id.*

In 2022, Mr. Weston listed SKWeston for sale on a website "bizbuysell.com." *Id.* ¶ 22. Plaintiff saw the advertisement and requested a non-disclosure agreement allowing him to review SKWeston's financial and business information. *Id.* ¶ 23. The Confidential Information Memorandum ("CIM") Plaintiff received "purported to include SKWeston's financial results for 2019 through 2022 with a projected $3.87M of revenue for 2022." *Id.* ¶ 26. On January 18, 2023, based on the information he had received in due diligence, Plaintiff submitted a letter of intent to purchase SKWeston for $6.9 million, with an earnout of $2.1 million. *Id.* ¶ 28. The earnout and financing terms were revised on February 1, 2023. *Id.* ¶ 29.

On February 15, 2023, Plaintiff had a due diligence call with Mr. Weston and the broker. *Id.* ¶ 30. During the call and in the provision of responses afterward, Mr. Weston did not disclose any prior litigation, including the Davies Lawsuit. *Id.* The parties continued due diligence throughout March, April, and early May of 2023. *Id.* ¶¶ 31–41. In the course of those discussions, the broker implied to Plaintiff that "a business valuation could be a problem." *Id.* ¶ 33. Additionally, Mr. Weston could not provide signed financial documents from a Certified Public Accountant as promised, *id.* ¶¶ 34–37, and instead provided documents purporting to be generated from QuickBooks and provided by his outsourced Chief Financial Officer, Travis Hamburg. *Id.* ¶¶

38–41. Those documents included a balance sheet for 2022 ("False 2022 Balance Sheet"), which instead was a Word document that Mr. Weston converted to a PDF. *Id.* ¶ 41.

Plaintiff's lender engaged in its own due diligence process, including commissioning a business valuation. *Id.* ¶ 43. The lender approved a loan in the amount of $4,100,000.00. *Id.* ¶ 44. Based on the False 2022 Balance Sheet and the other fraudulent financial information Mr. Weston provided, Plaintiff proceeded to closing and purchased SKWeston for $6,900,000.00 in May, 2023. *Id.* ¶ 45.

After closing, on June 29, 2023, Mr. Weston paid $2,660,865.44 from the proceeds of the sale of SKWeston to Ms. Weston. *Id.* ¶ 121. Those proceeds were specifically identified as a "marital asset" to be distributed to Ms. Weston in Paragraph 7 of a Marital Property Settlement Agreement ("MPSA") dated June 23, 2023, between Mr. Weston and Ms. Weston. *Id.* ¶ 128.

Years after the closing and transfer of proceeds to Ms. Weston, on September 19, 2025, Plaintiff obtained from Travis Hamburg SKWeston's actual 2022 Balance Sheet ("True 2022 Balance Sheet"). *Id.* ¶ 47; *see* Exh. 4. A comparison revealed that the False 2022 Balance Sheet multiplied revenues "by roughly twenty-four times," among other falsehoods that created the effect "that a tiny, money-losing company with negative net worth falsely appears to be a multi-million-dollar, highly profitable business with over $1.9 million in equity." *Id.* ¶ 49. In addition, Mr. Weston had intentionally inflated the company's revenue and receivables, which were material to Plaintiff's decision to purchase SKWeston, and exaggerated its client list. *Id.* ¶¶ 50–55. Plaintiff relied on all of the fraudulent financial information provided by Mr. Weston in deciding to purchase the company. *Id.* ¶¶ 56–60.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty.*

*Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (Agee, J., concurring in part), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' …."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the

minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin*., 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc*., 791 F.3d 473, 484 (4th Cir. 2015). A court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, "[a] court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

## III. ANALYSIS

In the Amended Complaint, as in the original version, the overwhelming majority of Plaintiff's allegations describe wrongdoing by Mr. Weston. But Count IV asserts an unjust enrichment claim against Ms. Weston. Such a claim requires allegations plausibly pleading that "the circumstances of the receipt of the benefit are such as between the two that to retain it would be unjust." *Bank of Am. Corp. v. Gibbons*, 918 A.2d 565, 576 (Md. 2007) (internal citations omitted). Although the Amended Complaint adds some factual allegations to the unjust enrichment count, the factual assertions involving Ms. Weston remain sparse.

Plaintiff repeatedly reviews the amount and date of the sale of SKWeston by Mr. Weston to Plaintiff and the fact that, on June 29, 2023, Mr. Weston transferred $2,660,865.44 of the sale proceeds to Ms. Weston. ECF 33 ¶¶ 120–127, 129. He asserts the relatively straightforward fact that, in those two transactions, his purchase of SKWeston conferred a benefit on Mr. Weston and, indirectly, on Ms. Weston. *Id.* ¶¶ 125–127. He pleads that the proceeds transferred to Ms. Weston "were specifically identified as a 'marital asset' to be distributed to her in Paragraph 7 of a Marital Property Settlement Agreement, dated June 23, 2023, between Kathleen Weston and Steven Weston, which agreement required that $2,660,865.44 of the 'net proceeds' of Mr. Weston's sale of SKWeston be transferred to Ms. Weston." *Id.* ¶ 128. Then he conclusorily refers to "the fraudulent and dishonest circumstances in which Mr. Weston and Ms. Weston obtained those proceeds," *id.* ¶ 130, without specifying what fraudulent or dishonest conduct Ms. Weston engaged in.

Seemingly conceding that he cannot establish Ms. Weston's involvement in any fraud, Plaintiff cites *Gibbons*, 918 A.2d at 573, for the proposition that an injured party may pursue an unjust enrichment claim against an innocent transferee. *See* ECF 33 ¶ 130. But *Gibbons* does not go as far as Plaintiff suggests. The allegations in the Amended Complaint, which identify the MPSA and provide that the transfer to Ms. Weston occurred pursuant to its dictates, *see id.* ¶ 128, establish that she was a bona fide transferee for value. "[B]ona fide purchaser status is an 'affirmative defense' to an unjust enrichment claim." *Lacks v. Ultragenyx Pharm., Inc.*, 734 F. Supp. 3d 397, 419 (D. Md. 2024) (quoting Restatement (Third) of Restitution & Unjust Enrichment § 66). Ms. Weston qualifies as a bona fide purchaser because the Amended Complaint's allegations, taken as true, establish that she received the funds "for valuable

consideration, in good faith, and without notice of another's prior claim to the property."[1] *Id.* at 414 (internal quotations omitted). And as the *Lacks* court found, where a complaint alleges facts sufficient to establish a defendant is a bona fide transferee for value, the plaintiff has "pled [himself] out of [his] claim" for unjust enrichment and "that is a sound basis for granting a motion to dismiss." *Id.* at 421–22.

While *Gibbons* establishes that an innocent transferee may be liable for unjust enrichment for funds received "by gratuitous grant, by will or by descent," 918 A.3d at 576 (quoting Restatement (First) of Restitution § 123), this case does not present those facts. Ms. Weston entered into the MPSA, where she "paid value" for her receipt of the sale proceeds in the form of relinquishment of her marital property claims and rights. By contrast, the spouse in *Gibbons* received the disputed funds by gratuitous grant from her husband. *See id.* At 567–68. The *Gibbons* court therefore held that the trial court erred in granting summary judgment in favor of the spouse because a "bona fide transferee who is not a purchaser for value" may still be liable for unjust enrichment, even if the plaintiff cannot establish actual knowledge of the fraud. *Id.* At 576. Therefore, the spouse in *Gibbons* is readily distinguishable from Ms. Weston, rendering that case inapposite.

## IV. CONCLUSION

For the reasons set forth above, Ms. Weston's Motion to Dismiss, ECF 36, will be GRANTED. At present, this Court will again dismiss the claim without prejudice to preserve Plaintiff's right to pursue relief should he uncover facts during discovery suggesting knowledge or culpability on the part of Ms. Weston. Any attempt to replead the unjust enrichment claim absent

[1] Plaintiff's fraud claim did not arise until September 2025, more than two years after Ms. Weston received her share of the sale proceeds. ECF 33 ¶¶ 45–47, 59, 121. Plaintiff alleges no facts suggesting that Ms. Weston otherwise had knowledge of the fraudulent documents he received before the sale.

such new facts may result in dismissal with prejudice. Further, should Plaintiff's claims against Mr. Weston eventually be disposed of via default (meaning that no discovery occurs), this Court will consider a request by Plaintiff to convert this dismissal to dismissal with prejudice to permit appeal. A separate Order follows.

Dated: September 14, 2026

/s/
Stephanie A. Gallagher
United States District Judge